**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

GARY KEITH LAMOREAUX,     :
     : No. 3:17-cv-00238
         Plaintiff     :
     : Judge Richard P. Conaboy
        V.     :
     :
NANCY A. BERRYHILL,     :
Acting Commissioner of     :
Social Security,     :
     :
        Defendant     :
_____

## Memorandum

### I. Procedural Background.

We consider here Plaintiff's appeal from an unfavorable decision of the Social Security Administration ("SSA" or "Agency") concerning his application for Social Security Disability Benefits ("DIB"). Plaintiff's application was initially denied at the administrative level on March 4, 2014. Plaintiff then filed a request for a hearing before an Administrative Law Judge ("ALJ"). Such a hearing was conducted on July 2, 2015 and it resulted in a denial of benefits. Plaintiff then requested review from the Appeals Council.  The Appeals Council denied review by written decision dated Dec. 21, 2016 whereupon Plaintiff appealed to this Court. This Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g).

1

**II.** Testimony before the ALJ.

A.    Plaintiff's Testimony.

Plaintiff's hearing was conducted in Wilkes-Barre, PA on July 2, 2015. ALJ Michele Stolls presided and testimony was taken from Plaintiff Lamoreaux and Patricia Chilleri, a vocational expert. Plaintiff was represented at the hearing by attorney John A. Bednarz. Plaintiff's testimony may be summarized as follows.

Plaintiff lives with his wife and two daughters in Nanticoke, Pennsylvania. He is unable to help much with the care of his daughters. The daughters were aged 9 and 13 at the time of the hearing. He describes them as self-sustaining because he cannot provide them much assistance and his wife also suffers from various medical conditions.

Plaintiff's back problems have gotten worse since he filed a function report in March of 2014. He uses a cane intermittently but has been advised by a physician's assistant that he should not become overly dependent on the cane. Accordingly, he now uses the cane only when in stores and he is not generally in stores very long.

He works at a part-time, modified duty type of job under the direction of project manager Kathy Goodwin. Ms. Goodwin has supervised Plaintiff for 5 years at two different employers, United

Rehabilitation Services ("URS") and Portco. Plaintiff has essentially performed modified light duty cleaning with no exertion above his head or below his knees. Cleaning tasks that exceed these parameters were performed by other employees. He also received accommodations in the form of extra breaks if his diabetes flares or pain in his hips or back intensifies. His work is performed in the Federal Court House in Wilkes-Barre. He helps to clean bathrooms, courtrooms, and the judge's chambers. His work mainly consists of dusting and wiping down sinks, mirrors, and tables. At the time of his hearing, Plaintiff was working approximately 16 hours per week.

Plaintiff's job was designed for someone with physical and/or mental problems. His previous boss, Dave Bogar, had stated that if the job was one where he had been held to the expectations of a healthy worker he would have been fired a long time ago. Plaintiff testified that he can stay on his feet for approximately 45 minutes to an hour and that his job requires no lifting or carrying. He pushes carts, empties waste baskets, and handles nothing heavier that a spray bottle. He estimates that he can lift or carry about 5 pounds. Plaintiff testified further that he holds a driver's license and has no issues with driving. He stated that he had not

taken any vacations since the onset of his disability in November of 2012.

Plaintiff weighed 410 to 415 lbs. on the date of his hearing. He is 6 feet 3 inches tall. He has been as heavy as 430 pounds in the past but had lost some weight by modifying his eating habits. He takes Hydrocodone twice daily and denied side effects from that medication. He also takes Cymbalta (30 mgs.) for pain at bed time and Zanaflex for muscle spasms. He also denies side effects from either of these medications. He has no difficulty concentrating.

Plaintiff's most recent blood work caused his family doctor to increase his Metformin prescription from 750 to 1,0000 mgs. He also takes an unidentified medication to control his blood pressure. He is aware of the diet a diabetic should follow and had been advised by an unnamed physician to have bariatric surgery. He has decided he will not undergo that surgery. Since his doctor increased his dose of Metformin, his blood sugar level had dropped from 167 to 127. At times, though, his blood sugar drops as low as 80.

Regarding his decision to decline bariatric surgery, Plaintiff stated that he went to two informational sessions and discussed bariatric surgery with people who had undergone the procedure. These discussions involved post-surgery complications and this caused Plaintiff to decline the surgery. Plaintiff also stated that

pain in his left hip makes it difficult for him to walk. This pain is arthritic and he believes it stems from an automobile accident he had in 2000. He relates that he is in constant pain every day and that, while the Hydrocodone helps with the hip pain, it does little to alleviate his back pain. It was his understanding that an MRI of his lumbar spine showed two collapsed discs, which were surgically removed, and several other bulging discs. He states that his low back pain is constant and that it is accompanied by muscle spasms and stabbing pain that travels down his legs into his feet. He states that he has purchased an adjustable bed to help him get into a comfortable position but that he manages to get only 3 to 4 hours sleep each night.

Plaintiff's shift starts at 6:30 a.m. His employer is sensitive to his physical limitations and does not require him to do various activities that his co-workers perform. He is also allowed to take short, unscheduled brakes as he feels the need. He tries to keep such breaks to 10 minutes or less because: "I try not to take advantage of the situation that they provided for me." He estimates that he takes 4 to 5 of these 10 minute breaks during his 4 hour work day.

Plaintiff explained further that, while his employer accepts the fact that he cannot complete his tasks as quickly as his co-

5

workers, he is subject to time studies which have resulted in his hourly rate progressively dropping over a period of years. Upon questioning by his attorney, Plaintiff explained that his activities around the house are confined to helping his wife put clothes in the washer and take them out of the dryer. When he feels up to it he tries to do some cooking and cleaning to some unspecified extent.

### B. Vocational expert testimony.

Patricia Chilleri, a vocational expert, also testified. Without objection from Plaintiff's counsel, Ms. Chilleri asked Plaintiff a series of questions to better familiarize herself with the physical demands of Plaintiff's past relevant employment. The vocational expert stated that from 2010 through the onset of Plaintiff's alleged disability on November 30, 2012 Plaintiff worked under the supervision of URS, a company that works cooperatively with the Pennsylvania Office of Vocational Rehabilitation to provide supportive competitive employment with relaxed work standards. Upon being informed of this, the ALJ stated on the record that none of the work Plaintiff performed through URS would be considered as past relevant work.

Ms. Chilleri stated that her review of Plaintiff's file indicated that he was currently 34 years of age and should be

considered a "younger individual". She also indicated that Plaintiff had a high school education and his past relevant work history (prior to his involvement with URS) was primarily with Weis Markets as a meat cutter, meat wrapper, and stock clerk. These jobs were at either a heavy or medium exertional level. Plaintiff also worked for a time at facilities where he performed packing duties at a light exertional level.

The ALJ posed a hypothetical question to Ms. Chilleri in which she was asked to assess the work capacity of a hypothetical individual the same age and with the same work experience and educational level as the Plaintiff. She was asked to further assume that this individual had the residual functional capacity ("RFC") to perform sedentary work with additional limitations including: only occasional balancing, stooping and climbing on ramps or stairs; avoidance of climbing on ladders, ropes, or scaffolds; avoidance of kneeling, crouching, or crawling; avoidance of pushing or pulling with the lower extremities; avoidance of concentrated prolonged exposure to fumes, odors, dust, gases, chemical irritants, poor ventilation, extreme temperatures, excessive vibration, or extreme dampness or humidity; no exposure to dangerous machinery or unprotected heights; and limitation to low

stress jobs requiring only occasional interaction with supervisors, co-workers, and the general public.

Based on this hypothetical question, the vocational expert opined that the hypothetical person could not perform any of Plaintiff's past relevant work but could perform several sedentary jobs that exist in significant numbers in the national economy. These jobs included: "bench worker"; and "tester/inspector". When the vocational expert was asked a second hypothetical question involving the same profile as the first with an additional limitation imposed that the hypothetical person would be off task 30% of the workday due to chronic and severe back and hip pain, the vocational expert stated that such an individual would be incapable of sustaining full time employment of any kind.

**I.** Evidence of Record

**A.** Geisinger Health System

Treatment notes concerning this claimant are derived exclusively from the Geisinger Health System. These notes were compiled by several physicians and document Plaintiff's morbid obesity, history of laminectomy at L5 as documented by a 2004 lumbar spine MRI, multiple positive straight leg raising tests, diabetes mellitus, degenerative joint disease bilaterally in the ankles and hips, and degenerative disc disease of the lumbar spine

with attendant radiculopathy. Each of these conditions is recognized as a "severe impairment" by the ALJ. See Doc. 10-2 at 16. None of the physicians who treated Plaintiff at Geisinger provided any opinion, however, as to the degree of impairment these conditions imposed nor did any of these physicians produce a physical capacities evaluation form with respect to the Plaintiff.[1]

**B.**    Medical Opinion

A medical report from a state agency consulting physician, Dr. Leo P. Potera, who did not physically examine the Plaintiff but merely reviewed records produced by his treating physicians, was produced for the Disability Determination Service on March 13, 2014. Dr. Potera indicated impairment diagnoses of discogenic and degenerative back disorders and obesity. Dr. Potera assessed that Plaintiff's diagnosed impairments could reasonably be expected to produce Plaintiff's pain and other symptoms and also found that Plaintiff's complaints about the intensity, persistence and functional limitations of his symptoms were substantiated by the objective medical evidence.

Dr. Potera found also that Plaintiff could stand or walk for 4 hours and sit for 6 hours in an 8 hours workday. Additionally, Dr. Potera found that Plaintiff could: lift and carry up to 20 pounds

---

[1] Plaintiff's counsel informs the Court that, in this case and others as well, it has not been possible to get medical opinions from Geisinger physicians. See Doc. 19 at P.9,n.5.

occasionally; lift and carry up to 10 pounds frequently; operate hand controls and foot pedals subject only to his lifting and carrying exertional levels; and could do all these things while operating on "normal breaks" with additional limitations as to climbing, kneeling, and crouching. From these conclusions, Dr. Potera opined that this 415 lb. claimant with a body mass index measured at 52 could perform his past relevant work as a custodian.

### C. Other Relevant Evidence.

The record also includes two letters (R at 140 and 249) from Kathy Goodwin, Plaintiff's supervisor in his job as a custodian at the Federal Courthouse in Wilkes-Barre, Pennsylvania. Ms. Goodwin supervised Plaintiff for 5 years on behalf of two different employers who contracted with the General Services Administration ("GSA"). She described Plaintiff as a "good worker". She also indicated that Plaintiff's bending restrictions, his inability to do heavy lifting, and his fluctuating blood sugar levels combined to require that he be accommodated in various ways in order that he be able to maintain his employment. Ms. Goodwin also noted that his rate of pay was subject to periodic time studies imposed by the GSA and that these studies indicated that his performance has slowed over the years because "certain tasks have become painfully difficult for him". This progressive slowing in the rate at which

he completes tasks has resulted in his hourly wage dropping from $11.08 per hour to $8.84 per hour and, as of Ms. Goodwin's last communication, to $8.00 per hour. She described the program which employs Plaintiff as "a non-profit vocational training facility for adults with disabilities".

**I. The ALJ Decision.**

The ALJ's decision (Doc. 10-2) was unfavorable to the Plaintiff. The ALJ made the following findings of fact and conclusions of law.

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2019.

2. The claimant has not engaged in substantial gainful activities since November 30, 2012. The alleged onset date.

3. The claimant has the following severe impairments: morbid obesity, degenerative disc disease/degenerative joint disease of the lumbosacral spine with radicular pain and status post-surgery, diabetes mellitus, degenerative joint disease of both ankles, mild degenerative joint disease of both hips with possible femoral

acetabular impingement, and severe muscle deconditioning.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in the Code of Federal Regulations.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except his ability to work at that level is reduced in that he is limited to occupations that require no more than occasional postural maneuvers, such as balancing, stooping and climbing on ramps and stairs. He must avoid occupations that require climbing on ladders, ropes and scaffolds, or kneeling, crouching, or crawling. He must avoid occupations that require pushing or pulling with the lower extremities to include the operation of foot peddles. He must avoid concentrated prolonged exposure to fumes,

odors, dust, gases, chemical irritants, environments with poor ventilation, temperature extremes, vibration, extreme dampness and humidity, or exposure to hazards such as dangerous machinery and unprotected heights. He is limited to occupations requiring no more than simple, routine tasks, not performed in a fast-paced production environment, involving only simple work-related decisions, and in general, relatively few workplace changes. He is limited to occupations which require no more than occasional interaction with supervisors, co-workers, and members of the general public. He is limited to occupations requiring low stress, defined as occasional decision-making required.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born on November 20, 1980 and was 32 years old which is defined as a younger individual age 18-44, on the alleged disability onset date.

8.   The claimant has at least a high school
     education and is able to communicate in
     English.

9.   Transferability of job skills is not material
     to the determination of disability because
     using the Medical-Vocational Rules as a
     framework supports a finding that the claimant
     is "not disabled," whether or not the claimant
     has transferrable job skills.

10.  Considering the claimant's age, education, work
     experience, and residual functional capacity,
     there are jobs that exist in significant
     numbers in the national economy that the
     claimant can perform.

11.  The claimant has not been under a disability,
     as defined in the Social Security Act, from
     November 30, 2012, through the date of this
     decision (September 2, 2015).

**I.**   Disability Determination Process.

The Commissioner is required to use a five-step analysis to
determine whether a claimant is disabled.[2]  It is necessary for the

---

[2]     ADisability@ is defined as the Ainability to engage in any substantial
gainful activity by reason of any medically determinable physical or mental

Commissioner to ascertain: 1) whether the applicant is engaged in a substantial activity; 2) whether the applicant is severely impaired; 3) whether the impairment matches or is equal to the requirements of one of the listed impairments, whereby he qualifies for benefits without further inquiry; 4) whether the claimant can perform his past work; 5) whether the claimant=s impairment together with his age, education, and past work experiences preclude him from doing any other sort of work. 20 CFR '' 404.1520(b)-(g), 416.920(b)-(g); *see Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 888-89 (1990).

The disability determination involves shifting burdens of proof. The initial burden rests with the claimant to demonstrate that he or she is unable to engage in his or her past relevant work. If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person

---

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .@ 42 U.S.C. ' 423(d)(1)(A). The Act further provides that an individual is disabled

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. ' 423(d)(2)(A).

with the claimant=s abilities, age, education, and work experience

can perform.  *Mason v. Shalala*, 993 F.2d 1058, 1064 (3d Cir. 1993).

As set out above, the instant decision was decided at the

fifth step of the process when the ALJ found there are jobs that

exist in the national economy that Plaintiff is able to perform.

(R. at 23-24).

**VI. Standard of Review**

This Court's review of the Commissioner=s final decision is

limited to determining whether there is substantial evidence to

support the Commissioner=s decision.  42 U.S.C. ' 405(g); *Hartranft

v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).  Substantial evidence

means Amore than a mere scintilla.  It means such relevant evidence

as a reasonable mind might accept as adequate to support a

conclusion.@  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see

also Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).  The Third

Circuit Court of Appeals further explained this standard in *Kent v.

Schweiker*, 710 F.2d 110 (3d Cir. 1983).

> This oft-cited language is not . . . a
> talismanic or self-executing formula for
> adjudication; rather, our decisions make clear
> that determination of the existence *vel non* of
> substantial evidence is *not* merely a
> quantitative exercise.  A single piece of
> evidence will not satisfy the substantiality
> test if the Secretary ignores, or fails to
> resolve, a conflict created by countervailing
> evidence.  Nor is evidence substantial if it

16

> is overwhelmed by other evidenceB-particularly
> certain types of evidence (e.g., that offered
> by treating physicians)B-or if it really
> constitutes not evidence but mere conclusion.
> *See Cotter*, 642 F.2d at 706 (ASubstantial
> evidence@ can only be considered as supporting
> evidence in relationship to all the other
> evidence in the record.@) (footnote omitted).
> The search for substantial evidence is thus a
> qualitative exercise without which our review
> of social security disability cases ceases to
> be merely deferential and becomes instead a
> sham.

710 F.2d at 114.

This guidance makes clear it is necessary for the Secretary

to analyze all evidence. If she has not done so and has not

sufficiently explained the weight given to all probative exhibits,

Ato say that [the] decision is supported by substantial evidence

approaches an abdication of the court=s duty to scrutinize the

record as a whole to determine whether the conclusions reached are

rational.@ *Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir.

1979). In *Cotter*, the Circuit Court clarified that the ALJ must

not only state the evidence considered which supports the result

but also indicate what evidence was rejected: ASince it is

apparent that the ALJ cannot reject evidence for no reason or the

wrong reason, an explanation from the ALJ of the reason why

probative evidence has been rejected is required so that a

reviewing court can determine whether the reasons for rejection

17

were improper.@ *Cotter*, 642 F.2d at 706-07.  However, the ALJ

need not undertake an exhaustive discussion of all the evidence.

*See*, *e.g.*, *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  AThere

is no requirement that the ALJ discuss in its opinion every tidbit

of evidence included in the record.@  *Hur v. Barnhart*, 94 F. App=x

130, 133 (3d Cir. 2004).  A[W]here [a reviewing court] can

determine that there is substantial evidence supporting the

Commissioner=s decision, . . . the *Cotter* doctrine is not

implicated.@  *Hernandez v. Commissioner of Social Security*, 89

Fed. Appx. 771, 774 (3d Cir. 2004) (not precedential).

A reviewing court may not set aside the Commissioner=s final

decision if it is supported by substantial evidence, even if the

court would have reached different factual conclusions.  *Hartranft*,

181 F.3d at 360 (*citing Monsour Medical Center v. Heckler*, 806 F.2d

1185, 1190-91 (3d Cir. 1986); 42 U.S.C. ' 405(g) (A[t]he findings

of the Commissioner of Social Security as to any fact, if supported

by substantial evidence, shall be conclusive . . .@).  AHowever,

even if the Secretary=s factual findings are supported by

substantial evidence, [a court] may review whether the Secretary,

in making his findings, applied the correct legal standards to the

facts presented.@  *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d

Cir. 1983) (internal quotation omitted).  Where the ALJ=s decision

is explained in sufficient detail to allow meaningful judicial review and the decision is supported by substantial evidence, a claimed error may be deemed harmless. *See*, *e.g.*, *Albury v. Commissioner of Social Security*, 116 F. App=x 328, 330 (3d Cir. 2004) (not precedential) (citing *Burnett v. Commissioner*, 220 F.3d 112 (3d Cir. 2000) (A[O]ur primary concern has always been the ability to conduct meaningful judicial review.@). An ALJ=s decision can only be reviewed by a court based on the evidence that was before the ALJ at the time he or she made his or her decision. *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001).

**VII. Discussion**

**A. General Considerations**

At the outset of our review of whether the ALJ has met the substantial evidence standard regarding the matters at issue here, we note the Third Circuit has repeatedly emphasized the special nature of proceedings for disability benefits. *See Dobrowolsky*, 606 F.2d at 406. Social Security proceedings are not strictly adversarial, but rather the Social Security Administration provides an applicant with assistance to prove his claim. *Id.* AThese proceedings are extremely important to the claimants, who are in real need in most instances and who claim not charity but that which is rightfully due as provided for in Chapter 7, Subchapter

II, of the Social Security Act.@ *Hess v. Secretary of Health, Education and Welfare*, 497 F. 2d 837, 840 (3d Cir. 1974). As such, the agency must take extra care in developing an administrative record and in explicitly weighing all evidence. *Dobrowolsky*, 606 F.2d at 406. Further, the court in *Dobrowolsky* noted Athe cases demonstrate that, consistent with the legislative purpose, courts have mandated that leniency be shown in establishing the claimant=s disability, and that the Secretary=s responsibility to rebut it be strictly construed.@ *Id.*

**B. Plaintiff's Allegations of Error.**

Plaintiff makes four assignments of error: (1) that the ALJ failed to explain how she evaluated Plaintiff's obesity; (2) that the ALJ erred by improperly rejecting Plaintiff's subjective complaints of the pain; (3) that the ALJ erred by improperly assessing the statements provided by Plaintiff's work supervisor; and (4) that the ALJ erred by giving "great weight" to the flawed report of a state agency consulting physician. We consider Plaintiff's first two assignments of error as so closely intertwined for analytical purposes that we will examine them as one. Plaintiff's third and fourth assignments of error will be addressed in turn.

**1. The ALJ's evaluation of Plaintiff's obesity and subjective complaints of pain.**

The ALJ acknowledged that Plaintiff, who weighed anywhere between 405 and 424 lbs. as recorded at various places in the record, was morbidly obese.[3] Plaintiff argues that, while the ALJ acknowledged that he was morbidly obese, she failed to adequately explain the limiting effect of his obesity in assessing his ("RFC"). Plaintiff cites Diaz v. Commissioner of Social Security, 557 F.3rd 500(3rd Cir. 2009), for the proposition that the limiting effects of obesity must be considered in combination with all other identified impairments in determining a Plaintiff's RFC. Further, Diaz references the Agency's instruction at SSR 00-3p to the effect that:

> Obesity may increase the severity of coexisting or related impairments to the existent that the combination of impairments meets the requirement of a listing. This is especially true of musculoskeletal, respiratory, and cardiovascular impairments. … and ALJ must meaningfully consider the effect of a claimant's obesity, individually and in combination with her impairments, on her workplace function at step 3 and at every subsequent step.

---

[3] Extreme (morbid) obesity is defined as having a body mass index ("BMI") of 35 or more. Plaintiff's BMI has been measured at 52 (Doc. 10-3 at 6). A BMI of 52 places the Plaintiff in the realm of super morbidity. See www.nhlhi.nih.gov. Classification of Overweight and Obesity.

Diaz at 503-04.

In this case Plaintiff is identified as morbidly obese and afflicted by severe musculoskeletal problems. Thus, he falls squarely within the parameters of those claimants whose limitations are to be assessed under the above-referenced SSR 00-3p. In the section of the ALJ's decision in which she discusses Plaintiff's RFC (R. at 19-23), she mentions the fact of Plaintiff's obesity at no fewer than three places, yet her discussions of the combined effect of his obesity and other severe impairments is discussed only in the most generic way. The ALJ offers the conclusory, oft-used recitation that: "the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements considering the intensity, persistence, and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (R. at 22). The explanation to which the ALJ refers is suspect. In determining that Plaintiff's RFC can permit limited sedentary work the ALJ states that the Plaintiff's "allegedly limited daily activities cannot be objectively verified with any degree of certainty." (R. at 22-23). Having reviewed hundreds of these cases over the years, this Court cannot recall any case where the Plaintiff's account of his own activities was "objectively verified"

and, in any event, that is not the appropriate standard. In this case, one where the only doctor to offer an opinion as to Plaintiff's functional limitations has indicated that Plaintiff's account of the intensity, persistence, and limitations of his symptoms are substantiated by the objective medical evidence (R. at 106), the Plaintiff's complaints are entitled to "great weight" and cannot be ignored unless contradictory medical evidence exists. Mason v. Shalala, 994 F.2nd 1058, 1067-68 (3d Cir. 1993). See also 20 C.F.R. 404.1529(c)(4). The ALJ's discussion does not identify any contradictory medical evidence. Moreover, the ALJ's observation about a supposed lack of "objective verification" in no way fulfills the obligation to explain how the Plaintiff's obesity and other documented medical conditions combine to affect his RFC. The ALJ's second reason for determining that Plaintiff remains employable is rendered as: "even if the claimant's daily activities are truly limited as alleged, it is difficult to attribute the degree of limitation to the claimant's medical conditions." (R. at 23). This acknowledgement hinges on a supposition the ALJ has already rejected. (the veracity of the claimant's complaints) and provides no analysis of the degree to which the combined effect of the Plaintiff's obesity and other identified severe impairments affect his ability to work as required by Diaz, supra. The fact that

23

Plaintiff's severe impairments are "difficult to attribute" sheds no light on the extent of their combined effect.

With respect to Plaintiff's complaints of pain, the Court finds its significant that Plaintiff's complaints of pain are credited by the doctor whose report was used to buttress the ALJ's decision. When a claimant testifies, as Plaintiff has done in this case, to the limiting effects of pain stemming from established impairments, such complaints are normally entitled to great weight. Sykes v Apfel, 228 F.3d 259, 266 (3d Cir. 2000). An ALJ may not discount such complaints without credible contrary medical evidence. Green v. Schweiker, 749 F.2nd 1066, 1068 (3d Cir. 1984). The Court has thoroughly reviewed this record and has found no such contrary medical evidence nor does the ALJ direct us to any.

For these reasons, Plaintiff's allegations of error on these points are correct. This case must be remanded for further analysis and clarification of the degree to which Plaintiff's obesity, in combination with his other established impairments, including his seemingly his well established complaints of pain, limit his ability to work.

### 2. The ALJ's evaluation of the letters provided by Plaintiff's supervisor.

Kathy Goodwin, Plaintiff's supervisor of 5 years duration at his last place of employment, provided 2 letters that explain that

his work was heavily accommodated in nature, part-time, and that he had experienced increasing difficulty performing even his modified duty job. Plaintiff contends that the content of these letters provided evidence of the extent of Plaintiff's limitations that were insufficiently credited by the ALJ. See Doc. 19 at 24. The ALJ found that Ms. Goodwin's statements were not entitled to "great weight". (R. at 22). Thus, her statements were not ignored but rather discounted. The ALJ noted that Ms. Goodwin was not "an acceptable medical source" and that her observations "are accommodated in the residual functional capacity." (Id.)

Plaintiff's reply brief (Doc. 25 at 6-7) asserts that the ALJ's failure to account for Plaintiff's need for additional rest breaks due to blood sugar fluctuations, as described by Ms. Goodwin was error. It is true that the ALJ has acknowledged Plaintiff's diabetes mellitus as a severe impairment (R. at 68) and, yet, she provides no discussion as to the limiting effects of that condition in determining Plaintiff's RFC. In light of this fact, it was error not to provide more explanation of why Ms. Goodwin's observations regarding Plaintiff's need for frequent unscheduled breaks were not entitled to more significant weight. An explanation by the ALJ of why seemingly probative evidence has been rejected is necessary. Cotter v. Harris, Supra, at 706-07. This is more particularly so

where, as here, a lay witness with extensive contact with the
claimant for a period of years provides evidence regarding a
Plaintiff's physical capacities. SSR 06-03p provides that evidence
from "other sources" such as "public and private social welfare
agency personnel", is valuable because "it may be based on special
knowledge of the individual and may provide insight into the
severity of the impairment [s] and how it affects the individual's
ability to function." The ALJ's comment that Ms. Goodwin was not an
"acceptable medical source" is true but it misses the mark. Her
testimony was not offered to support a medical diagnosis. Rather,
it was offered in support of Plaintiff's testimony as to his need
for frequent rest breaks due to fluctuating blood sugar levels. A
more detailed explanation of why Ms. Goodwin's letters were not
accorded more credence is required here.

3. **The ALJ's reliance on the report of the state agency medical consultant.**

The ALJ assigned "great weight" to a medical report prepared
by Dr. Leo P. Potera, a state agency medical consultant. Dr. Potera
never examined Plaintiff but did review medical records from the
Geisinger Health System referring to Plaintiff's treatment history.
It is certainly true that state agency consultant opinions normally
merit significant consideration. Chandler v. Commissioner of Social

Security, 667 F.3d 356,361 (3d Cir. 2011). Nevertheless, two deficiencies in the consultant's report detract from its reliability. The consultant found: (1) that Plaintiff's diagnosed severe medical conditions could be expected to produce his pain and other symptoms; and (2) that Plaintiff's statements about the intensity, persistence, and functional limitations attributable to these conditions were substantiated by objective medical evidence. (R. 106). Conversely, after making these findings, the state agency consultant indicated, inter alia, that this 400 plus pound man with severe discogenic and degenerative back disorders could occasionally climb ladders, ropes and scaffolds, crouch, and crawl. The consultant found also that the claimant was capable of performing his past relevant work. These findings seem irreconcilable and, without more detailed explanation, strain credulity.

Another infirmity of the consultant's report is that he did not have the benefit of the latest MRI report on the condition of Plaintiff's back at the time he prepared his report. He did have the benefit of a 2010 MRI (R. 409) that demonstrated: "multiple areas of degenerative changes and disc displacement." A subsequent lumbar spine MRI performed on December 26, 2012 apparently did not make its way into the record until after Plaintiff's hearing, an

assertion that is undisputed by the Commissioner. (See Doc. 22 at 24). The comment by the radiologist on the 2012 MRI speaks to an apparent deterioration of Plaintiff's condition. Specifically, the report states, in pertinent part:

> There is now evidence of a shallow herniated disc in the midline which has increased in size since the previous examination and is in contact with the dural sac which is slightly displaced posteriorly. There is no central canal stenosis. There is moderate compromise of the neural foramina bilaterally.
>
> The L4-5 disc space has also progressed slightly in size. The disc space is narrowed and desiccated in a similar fashion to L5-S1 and the previous examinations and presents a broad-based herniation. The protrusion creates encroachment of the neural foramina bilaterally in a significant fashion. There is facet arthrosis. Central canal is slightly compromised.

L3-4 disc space presents a shallow protrusion and

facet arthrosis.

(R. at 594-96).

Because of the above-referenced inconsistencies and/or deficiencies, the Court cannot accept the consulting state agency physician's report as substantial evidence to support the ALJ's RFC determination. Accordingly, Plaintiff's assignment of error on this point is also well taken. The Court suggests that it may be necessary to have this Plaintiff seen by a consulting examining physician who can then provide a more detailed analysis of Plaintiff's physical capacities and restrictions.

**VIII. Conclusion:**

For all the reasons referenced in the foregoing memorandum, this case is remanded to the Commissioner for clarification and further development of the record in keeping with the points raised in the preceding discussion.

**BY THE COURT**

**S/Richard P. Conaboy**
**RICHARD P. CONABOY**
**UNITED STATES DISTRICT JUDGE**
**Dated: February 6, 2018**